UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

OPELTON KELLEY,

    Plaintiff,

v.                                                    Case No. 2:06-cv-211
                                                    HON. GORDON J. QUIST

JOANIE HINSA, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff, a prisoner currently confined at the Alger Maximum Security Correctional Facility (LMF), filed this 42 U.S.C. § 1983 action against Joanie Hinsa, Sherri Andrews, and Karen Gollinger. All defendants were employed at LMF during the relevant times. Defendant Hinsa was the Records Office Supervisor, Defendant Andrews was an office assistant and clerk in the mail room, and Defendant Gollinger was a word processor.

### I. Factual Summary

        Plaintiff alleges that during the period between March 22, 2004, and February 16, 2006, some fourteen articles of his legal mail were opened, searched, and read outside his presence. He alleges that prior to these events, he had properly requested that any search of his legal mail be done only in his presence. The items in question are as follows:

- (1) (Pl Ex 1) A letter from National Legal Professional Associates postmarked on September 29, 2005, stamped as legal mail by the sender. Defendant Andrews in her affidavit states that this mail was delivered to LMF unsealed; the prisoner mail receipt corroborates this statement.

- (2) (Pl Ex 2) A letter from Feiger, Feiger, Kenney & Johnson, Attorneys at law, postmarked September 28, 2005. Defendant Andrews states in her affidavit that this letter was delivered to Plaintiff intact. Plaintiff avers that it had been opened when he received it, which he noted on the mail receipt.

- (3) (Pl Ex 3) A letter from a sender not identified on the face of the envelope, stamped "personal and confidential," and postmarked July 26, 2005.

- (4) (Pl Ex 4) A letter from CDRC, State Appellate Defender, postmarked September 13, 2005. Defendant Andrews avers that this mail was mistakenly opened outside of Plaintiff's presence and that she had been unaware of the mistake until the filing of the present action.

- (5) (Pl Ex 5) A letter from a sender not identified on the face of the envelope, stamped "personal and confidential," and postmarked September 26, 2005.

- (6) (Pl Ex 6) A letter from Feiger, Feiger, Kenney & Johnson, Attorneys at Law, postmarked on October 12, 2005. Defendants state that this letter received special handling and was opened in Plaintiff's presence. Plaintiff avers that this letter was opened outside his presence, which he noted on the receipt.

- (7) (Pl Ex 8) A letter from the State Bar of Michigan, postmarked November 1, 2005.

- (8) (Pl Ex 9) A letter from the State of Michigan Administrative Board, postmarked November 16, 2005.

- (9) (Pl Ex 10) A letter from a sender not identified on the face of the envelope, postmarked November 22, 2005.

- (10) (Pl Ex 11) A letter from the State of Michigan Court of Appeals, postmarked March 22, 2004.

- (11) (Pl Ex 12) A letter from James, Sterling and Lawrence, Attorneys at Law, postmarked April 21, 2004.

- (12) (Pl Ex 13) A letter from the Michigan Appellate Assigned Counsel System, postmarked May 7, 2004.

- (13) (Pl Ex 14) A letter from the State of Michigan Court of Appeals, postmarked November 4, 2004.

- (14) (Pl Ex 15) A letter from Hatchett, DeWalt & Hatchett, P.L.L.C., postmarked February 14, 2006.

Plaintiff claims that these searches violated his rights under the First, Sixth, and Fourteenth Amendments. He seeks compensatory and injunctive relief, as well as punitive damages. Defendants seek to dismiss Defendant Hinsa and Defendant Gollinger from this action on the grounds that they were not personally involved in the alleged constitutional violations. Defendants next assert that the mail inspection policy in place from December 19, 2003, to April 18, 2005, was a reasonable response to the threat of bioterrorism, and that they followed MDOC policy with respect all mail items, except item 4. Defendants assert that therefore they did not violate Plaintiff's constitutional rights. Defendants claim that, although one piece of mail was inspected in the mail room after April 18, 2005, contrary to the then-effective policy, the failure to comply with the policy was unintentional and cannot give rise to a constitutional violation. Defendants allege that they never read any of Plaintiff's legal mail, and therefore Plaintiff's attorney-client privileges were not compromised. Defendants argue that Plaintiff can produce no evidence that he suffered actual injury as a result of the opening of his legal mail, and that this causes his access to courts claim to fail. Citing 42 U.S.C. §1997e(e), Defendants also argue that Plaintiff cannot claim damages for emotional harm, because he has not shown any attendant physical injury. Finally, Defendants claim that they are entitled to qualified immunity because they did not knowingly violate a clearly established constitutional right.

Presently before the Court is Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993 (single affidavit concerning state of mind created factual issue).

## II. Whether to dismiss Defendant Gollinger and Defendant Hinsa for lack of Personal involvement

Defendants first argue that the claims against Defendant Hinsa and Defendant Gollinger should be dismissed because Plaintiff has failed to state a claim against them. Defendant Hinsa contends that while she is the supervisor of the mail room, she does not physically process the

mail. Defendant Hinsa reviewed two of Plaintiff's Step I grievances regarding the processing of his mail. Her affidavit states that she had no personal involvement with Plaintiff's mail. Defendant Gollinger also denies any personal involvement with Plaintiff's mail in her affidavit.

A party cannot be held liable under §1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). *See also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance); *Lee v. Mich. Parole Bd.*, 104 Fed. Appx. 490, 2004 WL 1532563 at *2 (6th Cir., 2004) ("section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance").

Plaintiff has produced no evidence indicating that Defendants Hinsa and Gollinger were in any way personally involved in the processing of his mail. Defendant Hinsa cannot be held liable based solely on her review of Plaintiff's grievance. Therefore, it is recommended that Plaintiff's claims against these defendants be dismissed.

### III.  Which exhibits qualify as legal mail

Plaintiff contends that all fourteen of the listed items were "legal mail," and thus deserved heightened protection under the First Amendment. *See Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (The right to receive legal mail is a basic right protected by the courts). The Defendants assert that mail items 3, 5, 7, 8, and 9 were not legal mail, and thus were subject to the standard mail inspection procedures. The Sixth Circuit addressed the question of what

correspondence will qualify as legal mail in *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003). First, the court established that determining whether a given article of mail qualifies for special protection as legal mail is a question of law, to be resolved by the court. *Id*. at 873. Second, the court found that a letter from the American Bar Association (ABA) did not qualify for protection as legal mail, in part because the ABA is not a direct legal services organization. *Id.* at 875. Third, the court expressly found that "mail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise." *Id*. at 877. Finally, the court affirmed that mail from attorneys is "the very essence of legal mail." *Id*.

Items 1, 2, 4, 6, 11, 12, and 14 were clearly identified as sent by attorneys or legal services organizations. Therefore, they qualify as legal mail under *Sallier*. Items 10 and 13 were clearly identified as sent by courts. These items also qualify as legal mail. The remaining items either did not identify their origin in the return address (items 3, 5, and 9), or were from organizations, such as bar associations, with whom correspondence will not ordinarily require the heightened protection afforded legal mail under the First Amendment (items 7 and 8). It is therefore recommended that Plaintiff's claims pertaining to mail articles 3, 5, 7, 8 and 9 be dismissed.

**IV. Whether there was a First Amendment
     violation with respect to the legal mail**

Defendants first assert that the mail inspection policy in place from December 19, 2003, to April 18, 2005, was constitutionally sound. They argue that, while the policy mandated that prisoner legal mail be opened and inspected for contraband outside the presence of the prisoner, this provision was a reasonable response to security concerns raised by the threat of bioterrorism following the September 11, 2001, terrorist attacks. Defendants note that, although a prisoner's right to send and receive mail is protected by the First Amendment, prison officials may impose

restrictions that are reasonably related to security or other legitimate penological objectives. *See Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). Defendants cite *Sallier* in support of the proposition that the opening of prisoners' mail pursuant to an evenly-applied policy in the interest of maintaining prison security is constitutionally permissible. However, this interpretation ignores the clear holding in *Sallier*: " . . . [W]hen the incoming mail is "legal mail," we have heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier*, 343 F.3d at 874. "There is no penological interest or security concern that justifies opening such mail outside of the prisoner's presence when the prisoner has specifically requested otherwise." *Id*. at 877-78. *Sallier* was decided on September 18, 2003. In *Mallory v. MDOC, et al*, No. 1:04-cv-137, the Western District of Michigan held that the MDOC mail inspection policy permitting inspection of legal mail outside the presence of prisoners was facially unconstitutional. In response to the order issued in *Mallory*, the MDOC revised its mail inspection policy on April 18, 2005.

Defendants appear to suggest that the holding in *Sallier* did not render the Defendants' conduct unconstitutional until *Sallier* was interpreted and applied in *Mallory*, and an order issued permanently enjoining the MDOC from opening prisoner legal mail outside the presence of the recipient if the prisoner had requested to be present. However, *Sallier* definitively established the illegality of the actions alleged, even in the absence of an order such as that issued in *Mallory*. *See Clay v. Lake*, 2006 U.S. Dist. LEXIS 17839 (W.D. Mich. Apr. 7, 2006) (Defendants were not entitled to qualified immunity where they inspected Plaintiff's legal mail outside of his presence after *Sallier* was decided); *Thompson v. Caruso*, No. 05-2681 (6th Cir. 2006) (unpublished opinion)

("Plaintiffs' clearly established constitutional rights were violated when their legal mail was opened and inspected outside their presence on *December 14, 2003* ") (emphasis added). Therefore, the alleged inspection of Plaintiff's mail outside his presence during the period between March 22, 2004, and April 18, 2005 (items 10, 11, 12 and 13), was unconstitutional.

With respect to mail item 1, Defendants assert that the letter arrived at LMF unsealed. If Defendants did not open this letter, then no violation occurred with respect to it. Plaintiff has presented no evidence that would tend to refute this assertion. Therefore, Plaintiff has not met his burden to show a question of fact for trial with respect to mail item 1.

With respect to mail items 2 and 6, the affidavits of Plaintiff and Defendant Andrews are in direct contradiction. Plaintiff maintains that these items had been opened when he received them, while Defendant Andrews asserts that they received special legal handling and were opened in Plaintiff's presence. Plaintiff noted on the legal mail receipt for each of these items that the items were open when he received them. Accordingly, in the opinion of the undersigned, Plaintiff has met his burden to show the existence of a question of fact as to whether mail items 2 and 6 were opened outside his presence.

Defendants argue that they merely followed the applicable MDOC Policy Directive, and, therefore, they should not be held liable for any constitutional injury Plaintiff may have suffered. However, the fact that the unconstitutional actions were mandated by policy does not change the fact that they violated Plaintiff's constitutional rights. Defendants also cite *Calloway v. Miller*, 147 F.3d 778 (8th Cir. 1998), arguing that their actions cannot be deemed the cause in fact of Plaintiff's injury because they performed merely ministerial functions and had no authority to make substantive decisions regarding prisoner mail inspection. *Calloway* is an Arkansas case and is not the law of this Circuit. Furthermore, *Calloway* is hardly analogous to the present situation as

it primarily addressed the issue of the discretionary authority of a county election commission to invalidate an election, and its impact on the alleged discrimination suffered by the plaintiff.

Defendants admit that mail item 4 should have received special handling as legal mail and that it did not. Defendants contend that this was merely a mistake and establishes no more than negligence. Defendants state that the mail was never read. Plaintiff has not produced any evidence indicating that Defendant Andrews intentionally opened the legal mail or that the mail was read. Negligent conduct will not support an action for violation of constitutional rights under §1983, "because it is not 'arbitrary' in the constitutional sense." *Lewellen v. Metropolitan Gov't*, 34 F.3d 345, 351 (CA 6, 1994) (citing *collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). Therefore, the undersigned recommends that Plaintiff's claim that Defendant's violated his constitutional rights by opening mail item 4 be dismissed.

**V.  Summary judgment on Plaintiff's attorney-client
    and access to courts claims**

Defendants claim that at no point did they read any of Plaintiff's legal mail, and therefore Plaintiff's attorney-client privilege and access to courts claims must fail. To state a claim for unconstitutional interference with the right of access to the courts, a plaintiff must show that they suffered "actual injury" in a specific case. *Lewis v. Casey* 518 U.S. 343 (1996). Plaintiff has not produced any evidence that he suffered a legal injury in any specific case as a result of the mishandling of his legal mail, nor has he alleged that he suffered such injury. Therefore, it is recommended that Plaintiff's access to courts claims be dismissed. Likewise, Plaintiff has not met his burden to demonstrate a material question as to whether Defendants read his mail. Thus, Defendants are entitled to summary judgment on Plaintiff's attorney-client privilege claims.

## VI. <u>Physical injury requirement of 42 U.S.C. 1997(e)</u>

Defendants claim that 42 U.S.C. 1997(e) bars Plaintiff's claim for damages for mental and emotional harm because he has not suffered an attendant physical injury. 42 U.S.C. § 1997e(e) is not applicable to First Amendment claims. *Cannell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). In the opinion of the undersigned, Plaintiff is entitled to bring his claims for mental and emotional injury stemming from the violations of his rights under the First Amendment.

## VII. <u>Qualified Immunity</u>

Finally, Defendants claim that they are protected by qualified immunity because they did not knowingly violate a clearly established constitutional right. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

The heart of Defendants' argument is that during the period between December 19, 2003, when the MDOC legal mail policy permitting inspection outside the prisoner's presence took effect, and April 15, 2005, when this Court applied *Sallier* and found that policy unconstitutional, Plaintiff had no "clearly established" right to be present during the inspection of his legal mail. Defendants submit that *Sallier* dealt with a mail policy in place from 1994 through 1996, not the mail policy instituted on December 19, 2003. Defendants also argue that, although *Sallier* definitively settled that an inmate has a constitutional right to be present during the opening of his legal mail if he was so requested, the 2003 policy was nonetheless reasonable because of the threat of bioterrorism. *Sallier* was decided well after the anthrax attacks following the events of September 11, 2001. The *Sallier* court took legitimate prison security concerns into account when it held that prisoners have a constitutional right to be present during the inspection of their legal mail if they so request. As discussed above, the security concerns involved do not trump Plaintiff's First Amendment rights. While *Sallier* addressed a different MDOC policy than the one at issue here, it concerned the precisely same issue. The right of a prisoner to be present during the inspection of

his legal mail was clearly established by *Sallier*, not by *Mallory-Bey*. *Sallier* also established that mail from a court, in addition to mail from an attorney, is legal mail and deserves heightened protection. In the opinion of the undersigned, Defendants violated Plaintiff's clearly established rights with respect to mail items 10, 11, 12 and 13, and there is a question of fact as to whether Defendants violated the same rights with respect to mail items 2 and 6. Therefore, Defendants are not entitled to summary judgment on these claims.

In summary, in the opinion of the undersigned, Plaintiff has sustained his burden of proof, in part, and has failed to meet his burden, in part. Plaintiff has met his burden to establish a question of fact for trial with respect to his First Amendment claims involving mail items 2, 6, 10, 11, 12 and 13. Accordingly, it is recommended that Defendants' Motion for Dismissal and/or Summary Judgment (Docket #30) be denied as to these claims, and that Defendants be granted summary judgment with respect to Plaintiff's First Amendment claims involving the other mail items, his access to courts claims, and his attorney client privilege claims. Finally, it is recommended that Defendant Hinsa and Defendant Gollinger be dismissed from this action for lack of personal involvement.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   July 23, 2007                         /s/ Timothy P. Greeley
                                               TIMOTHY P. GREELEY
                                               UNITED STATES MAGISTRATE JUDGE